**AMENDED AND RESTATED**
**ARTICLES OF ASSOCIATION**
**PNC BANK, NATIONAL ASSOCIATION**
**Amended and Restated as of November 6, 2009**

FIRST:    The title of this Association shall be "PNC Bank, National Association."

SECOND:   The main office of the Association shall be in the City of Wilmington, New Castle County, Delaware. The general business of the Association shall be conducted at its main office and its branches.

THIRD:    The Board of Directors of the Association shall consist of not fewer than five (5) nor more than twenty-five (25) persons, the exact number of Directors within such minimum and maximum limits to be fixed and determined from time to time by a resolution of a majority of the full Board of Directors or by resolution of the shareholders at any annual or special meeting thereof. Each Director shall own such minimum qualifying equity interest in the ultimate parent bank holding company of the Association as shall be required from time to time by applicable law or regulation. Unless otherwise provided by the laws of the United States, any vacancy in the Board of Directors for any reason, including an increase in the number thereof, may be filled by action of the Board of Directors, within the limits then specified by law.

A majority of the Board of Directors then in office shall be necessary to constitute a quorum for the transaction of business at any meeting of the Board.

FOURTH:   The annual meeting of the shareholders for the election of Directors and the transaction of whatever other business may be brought before said meeting shall be held at the main office or such other place as the Board of Directors may designate, on the day of each year specified therefor in the By-Laws, but if no election is held on that day, it may be held on any subsequent day according to the provisions of law; and all elections shall be held according to such lawful regulations as may be prescribed by the Board of Directors. Any such action which may be taken at a meeting of the shareholders of the Association may be taken without a meeting if a consent in writing setting forth the action so taken is signed by all the shareholders who would be entitled to vote at a meeting for such purpose.

Terms of Directors, including Directors selected to fill vacancies, shall expire at the regular meeting of shareholders at which Directors are elected, unless a Director resigns or is removed from office prior to the date of such meeting.

Despite the expiration of a Director's term, the Director shall continue to serve until his or her successor is elected and qualifies or until there is a decrease in the number of Directors and his or her position is eliminated.

A Director may resign at any time by delivering written notice to the Board of Directors, its Chairman, or to the Association's Secretary, which resignation shall be effective when the notice is delivered unless the notice specifies a later effective date.

**Exhibit A-1**

FIFTH:     The amount of the authorized capital stock of the Association shall be $240,183,779.84, divided into (x) 7,388,470 shares of common stock with par value of Thirty-Two Dollars and Fifty Cents ($32.50) each (the "Common Stock"); and (y) 19,000 shares of preferred stock with the par value of One Dollar ($1.00) each, (i) 7,500 shares of which are designated as Series C preferred stock, (ii) 1,500 shares of which are designated as Series D preferred stock, (iii) 5,000 shares of which are designated as Series E Preferred Stock and (iv) 5,000 shares of which are designated as Series F Preferred Stock, and (z) 3,950,484 shares of preferred stock with the par value of One Cent ($0.01) each, all of which are designated as Series G Preferred Stock; but said common stock and preferred stock may be increased or decreased from time to time in accordance with the provisions of the laws of the United States and these Articles of Association.

No holder of shares of the capital stock of any class of the Association shall have any preemptive or preferential right of subscription to any shares of any class of stock of the Association, whether now or hereafter authorized, or to any obligations convertible into stock of the Association, issued or sold, nor any right of subscription to any thereof other than such, if any, as the Board of Directors, in its discretion, may from time to time determine and at such price as the Board of Directors may from time to time fix.

The Association, at any time and from time to time, may authorize and issue debt obligations, whether or not subordinated, without the approval of the shareholders.

A.     Description and Designation of Series C Preferred Stock

The 7,000 shares of Series C preferred stock shall be subject to the following designation, preferences, dividend, sinking fund, redemption, liquidation, conversion, voting and other rights, provided that no such terms shall provide for payment, upon liquidation, of any premium over and above the stated value plus declared but unpaid dividends on such preferred stock:

1.   Designation.  The designation of Series C preferred stock shall be Series C 9.00% Non-cumulative Preferred Stock (hereinafter referred to as "Series C") and the number of shares constituting Series C shall be 7,000 shares.  Shares of Series C shall have a stated value of $100,000 per share.  The number of authorized shares of Series C shall not be increased.

2.   Ranking.  The shares of Series C shall rank:

(a)  senior, as to dividends or upon liquidation, dissolution and winding up, to the Common Stock, and senior, as to dividends or upon liquidation, dissolution and winding up, to all other classes and series of capital stock of the Association now or hereafter authorized, issued or outstanding that, by their terms, expressly provide that they are junior, as to dividends or upon liquidation, dissolution and winding up, as the case may be, or which do not specify their rank (collectively, "Series C Junior Securities"); and

(b)  on a parity, as to dividends or upon liquidation, dissolution and winding up, with the Series D, Series E and Series F and with each class or series of capital stock of the Association now or hereafter authorized, issued or outstanding that, by their terms, expressly

2

provide that such class or series shall rank on a parity with the shares of Series C, as to dividends or upon liquidation, dissolution and winding up, as the case may be (collectively, "Series C Parity Securities"); and

(c) junior, as to dividends or upon liquidation, dissolution and winding up, with each class or series of capital stock of the Association now or hereafter authorized, issued or outstanding that, by their terms, expressly provide that such class or series shall rank senior to the shares of Series C as to dividends or upon liquidation, dissolution and winding up, as the case may be (collectively, "Series C Senior Securities").

Notwithstanding the foregoing, at any time when shares of Series C are issued and outstanding, any Series C Senior Securities issued without the requisite approval of holders of shares of Series C pursuant to Section (A)(8) hereof, if such approval is required thereunder, shall be deemed to be Series C Parity Securities, rather than Series C Senior Securities.

3. <u>Dividend Rights.</u>

(a) Dividends (if declared in accordance with Section (A)(3)(b) below) shall be payable in cash on the shares of Series C at a rate per annum equal to 9.00% of the stated value thereof for the period commencing on the January 15 or July 15 immediately preceding the date of original issuance of the shares and ending on, but excluding, the next succeeding January 15 or July 15, whichever date first follows the original issuance (the "Series C Initial Dividend Period"), and each semi-annual dividend period thereafter (each a "Series C Semi-Annual Dividend Period"), which Series C Semi-Annual Dividend Periods shall commence on January 15 and July 15 in each year, and shall end on and include the day next preceding the first day of the next Series C Semi-Annual Dividend Period (the Series C Initial Dividend Period and each Series C Semi-Annual Dividend Period shall be herein referred to individually as a "Series C Dividend Period" and collectively as "Series C Dividend Periods").

(b) Dividends at the rate specified in Section (A)(3)(a) above shall be payable, when, as and if declared by the Board of Directors of the Association, on January 15 or July 15 of each year (each a "Series C Dividend Payment Date"), commencing with the first Series C Dividend Payment Date that occurs after the shares of Series C have been issued; provided, however, that if a Series C Dividend Payment Date falls on a day that is not a business day, dividends (if declared) shall be paid on the next succeeding business day, except that, if such Business Day is in the next succeeding calendar year, such payment shall be made on the immediately preceding Business Day, in each case with the same force and effect as if made on such Series C Dividend Payment Date. The term "business day" means any day other than a day on which banking institutions in the state of Delaware or the Commonwealth of Pennsylvania are authorized or required to close. Each such dividend shall be paid to the holders of record of shares of Series C as they appear on the stock register of the Association at the close of business on the Business Day immediately preceding each Series C Dividend Payment Date.

(c) Dividends shall be non-cumulative. If the Board of Directors of the Association fails to declare a dividend on Series C for a Series C Dividend Period, then holders of the shares of Series C will have no right to receive a dividend for that Series C Dividend Period, and the Association will have no obligation to pay a dividend for that Series C Dividend

3

Period, whether or not dividends are declared and paid for future Series C Dividend Periods with respect to Series C or any other series of capital stock of the Association.

(d) If full dividends on Series C for the then current Series C Dividend Period shall not have been declared and paid when due, or declared and a sum sufficient for the payment thereof set apart for payment at the time due for payment, no dividends shall be declared or paid or set apart for payment and no other distribution shall be declared or made or set apart for payment upon the Common Stock or any other Series C Junior Securities, nor shall any Common Stock, any other Series C Junior Securities or any Series C Parity Securities be redeemed, purchased or otherwise acquired for any consideration (or any monies be paid to or made available to a sinking fund for such purpose) by the Association (except by conversion into or exchange for other Series C Junior Securities).

(e) When dividends are not paid in full (or a sum sufficient for such full payment is not set apart) upon Series C or any Series C Parity Securities, all dividends declared upon Series C and the Series C Parity Securities shall be declared *pro rata* so that the amount of dividends declared per share on Series C and the Series C Parity Securities shall in all cases bear to each other the same ratio that full dividends per share on Series C for the then-current Series C Dividend Period (which shall not include any accumulation in respect of unpaid dividends for prior Series C Dividend Periods) and full dividends per share, including required or permitted accumulations, if any, on the Series C Parity Securities bear to each other.

(f) Holders of the shares of Series C shall not be entitled to any dividend, whether payable in cash, property or stock, in excess of full dividends, as herein provided. No interest, or sum of money in lieu of interest, shall be payable in respect of any dividend payment or payments on the shares of Series C which may be in arrears.

(g) Dividends payable on Series C for any period less than a Series C Semi-Annual Dividend Period, including the Series C Initial Dividend Period, shall be computed on the basis of a 360-day year consisting of twelve 30-day months and the actual number of days. Dividends payable on Series C for each Series C Semi-Annual Dividend Period shall be computed by dividing the annual dividend rate by four.

4. Redemption.

(a) With the prior approval of the Office of the Comptroller of the Currency, shares of Series C are redeemable at any time, in whole or in part, provided that dividends thereon shall have been declared for the Series C Dividend Period in which the redemption date occurs to (but excluding) the redemption date (but without accumulation in respect of dividends for any prior Series C Dividend Periods). Such redemption shall be at a redemption price of $100,000 per share and shall be paid together with any declared and unpaid dividends. Any redemption of less than all the outstanding shares of Series C may be accomplished on a *pro rata* basis, by lot or by any other equitable means determined by the Association; provided, however, that no redemption shall be accomplished in a manner such that any holder would hold less than one share of Series C.

4

(b) In the event the Association shall elect to redeem the shares of Series C, the Association shall give notice to the holders of record not less than 10 nor more than 60 days prior to such redemption, by first class mail, postage prepaid, at their addresses as shown on the stock register of the Association, that the shares of Series C are to be redeemed. Each such notice shall state: (i) the redemption date; (ii) the redemption price; (iii) the place or places where certificates for such shares are to be surrendered for payment of the redemption price; and (iv) that dividends on the shares of Series C will cease to accrue on the redemption date.

(c) Notice having been mailed as aforesaid, from and after the applicable redemption date (unless default shall be made by the Association in providing money for the payment of the redemption price), dividends on the shares of Series C shall cease to accrue, and said shares shall no longer be deemed to be outstanding, and all rights of the holders thereof as shareholders of the Association (except the right to receive from the Association the redemption price) shall cease. Upon surrender of the certificates for any shares so redeemed (properly endorsed or assigned for transfer, if the Board of Directors shall so require and the notice shall so state), such shares shall be redeemed by the Association at the redemption price aforesaid.

(d) Any shares of Series C which shall at any time have been redeemed shall, after such redemption, be cancelled and may not be reissued.

(e) In the event that fewer than all the outstanding shares of Series C are to be redeemed, such shares shall be redeemed Pro Rata from each Holder of Series C.

5. <u>Liquidation Rights</u>.

(a) Upon the voluntary or involuntary liquidation, dissolution or winding up of the Association, the holders of the shares of Series C shall be entitled to receive and to be paid out of the assets of the Association available for distribution to its shareholders, before any payment of distribution shall be made in respect of the Common Stock or any other Series C Junior Securities, or to any affiliate of the Association, a liquidating distribution in an amount in cash equal to $100,000 per share of Series C, plus accumulated and unpaid dividends thereon for the Series C Dividend Period in which such payment is made to (but excluding) the date on which such payment is made available (but without accumulation in respect of dividends for any prior Series C Dividend Periods).

(b) After the payment to the holders of the shares of Series C of the full amount of the liquidating distribution to which they are entitled under this Section (A)(5), the holders of shares of Series C as such shall have no right or claim to any of the remaining assets of the Association.

(c) If, upon any voluntary or involuntary liquidation, dissolution or winding up of the Association, the amounts payable with respect to any liquidating distributions relating to the shares of Series C and any Series C Parity Securities which are not paid in full, the holders of the shares of Series C and the Series C Parity Securities will share ratably in any such distribution of assets of the Association in proportion to the full respective liquidating distributions to which they are entitled.

5

(d) Neither the voluntary sale, conveyance, exchange or transfer (for cash, shares of stock, securities or other consideration) of all or substantially all of the property and assets of the Association, nor the merger or consolidation of the Association with or into any one or more other persons, shall be deemed to be a voluntary or involuntary liquidation, dissolution or winding up for the purposes of this Section (A)(5), unless such voluntary sale, conveyance, exchange or transfer shall be in connection with a plan of liquidation, dissolution or winding up of the Association.

6. <u>Issuance Only Upon Conversion</u>.

(a) Subject to the terms and conditions of this Section (A)(6), each share of Series C will not be available to be issued for cash or any other consideration, but shall be issued only in the event the Company Preferred Securities ("CSLLC Preferred Securities") of PNC Bank Capital Securities, LLC ("CSLLC"), a Delaware limited liability company, are converted pursuant to an Optional Conversion Right (as defined in the Limited Liability Company Agreement of CSLLC, dated as of July 21, 2000 (the "CSLLC Agreement")) or in the event of a Mandatory Conversion (as defined in the CSLLC Agreement) into shares of Series C, in accordance with the terms thereof.

(b) Upon such a conversion as in (A)(6)(a), the Association shall be unconditionally obligated to issue, to each holder of CSLLC Preferred Securities, one share of Series C for each surrendered share of CSLLC Preferred Securities.

7. <u>Conversion</u>. The holders of shares of Series C shall not have any rights to convert such shares into shares of any other class or series of securities of the Association.

8. <u>Voting Rights</u>. Except as expressly required by law, the holders of shares of Series C shall have no voting power, and no right to vote on any matter at any time, either as a separate series or class or together with any other series or class of shares, and shall not be entitled to call a meeting of such holders for any purpose, nor shall they be entitled to participate in any meeting of the holders of the Common Stock. Notwithstanding the foregoing, no amendment may be made to the Articles of Association of the Association that would adversely affect the relative rights and preferences of Series C in any material respect, including, without limitation, the issuance of Series C Senior Securities at any time when shares of Series C are issued and outstanding, without the consent of the holders of 66 2/3% of the outstanding shares of Series C not held by the Association or its affiliates; provided, however that neither the authorization nor issuance of Series C Junior Securities, Series C Parity Securities or, at a time when no shares of Series C are issued and outstanding, Series C Senior Securities shall be deemed to be adverse to the Series C for purposes of this Section (A)(8).

9. <u>Legend</u>. Shares of the Series C will bear a legend substantially in the form of the following legend on the face thereof:

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY STATE SECURITIES LAWS OR ANY OTHER APPLICABLE SECURITIES LAW. NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE OFFERED, SOLD, ASSIGNED,

TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, SUCH REGISTRATION.

B.    Description and Designation of Series D Preferred Stock

The 1,500 shares of Series D preferred stock shall be subject to the following designation, preferences, dividend, sinking fund, redemption, liquidation, conversion, voting and other rights, provided that no such terms shall provide for payment, upon liquidation, of any premium over and above the stated value plus declared but unpaid dividends on such preferred stock:

1.    Designation.  The designation of Series D preferred stock shall be Series D 6.50% Non-cumulative Preferred Stock (hereinafter referred to as "Series D") and the number of shares constituting Series D shall be 1,500 shares.  Shares of Series D shall have a stated value of $100,000 per share.  The number of authorized shares of Series D shall not be increased.

2.    Ranking.  The shares of Series D shall rank:

(a)  senior, as to dividends or upon liquidation, dissolution and winding up, to the Common Stock, and senior, as to dividends or upon liquidation, dissolution and winding up, to all other classes and series of capital stock of the Association now or hereafter authorized, issued or outstanding that, by their terms, expressly provide that they are junior, as to dividends or upon liquidation, dissolution and winding up, as the case may be, or which do not specify their rank (collectively, "Series D Junior Securities"); and

(b)  on a parity, as to dividends or upon liquidation, dissolution and winding up, with the Series C, Series E and Series F and with each class or series of capital stock of the Association now or hereafter authorized, issued or outstanding that, by their terms, expressly provide that such class or series shall rank on a parity with the shares of Series D, as to dividends or upon liquidation, dissolution and winding up, as the case may be (collectively, "Series D Parity Securities"); and

(c)  junior, as to dividends or upon liquidation, dissolution and winding up, with each class or series of capital stock of the Association now or hereafter authorized, issued or outstanding that, by their terms, expressly provide that such class or series shall rank senior to the shares of Series D as to dividends or upon liquidation, dissolution and winding up, as the case may be (collectively, "Series D Senior Securities").

Notwithstanding the foregoing, at any time when shares of Series D are issued and outstanding, any Series D Senior Securities issued without the requisite approval of holders of shares of Series D pursuant to Section (B)(8) hereof, if such approval is required thereunder, shall be deemed to be Series D Parity Securities, rather than Series D Senior Securities.

3.    Dividend Rights.

(a)  Dividends (if declared in accordance with Section (B)(3)(b) below) shall be payable in cash on the shares of Series D at a rate per annum equal to 6.50% of the stated value thereof for the period commencing on the January 15 or July 15 immediately preceding the date

7

of original issuance of the shares and ending on, but excluding, the next succeeding January 15 or July 15, whichever date first follows the original issuance (the "Series D Initial Dividend Period"), and each semi-annual dividend period thereafter (each a "Series D Semi-Annual Dividend Period"), which Series D Semi-Annual Dividend Periods shall commence on January 15 and July 15 in each year, and shall end on and include the day next preceding the first day of the next Series D Semi-Annual Dividend Period (the Series D Initial Dividend Period and each Series D Semi-Annual Dividend Period shall be herein referred to individually as a "Series D Dividend Period" and collectively as "Series D Dividend Periods").

(b) Dividends at the rate specified in Section (B)(3)(a) above shall be payable, when, as and if declared by the Board of Directors of the Association, on January 15 or July 15 of each year (each a "Series D Dividend Payment Date"), commencing with the first Series D Dividend Payment Date that occurs after the shares of Series D have been issued; provided, however, that if a Series D Dividend Payment Date falls on a day that is not a business day, dividends (if declared) shall be paid on the next succeeding business day, except that, if such Business Day is in the next succeeding calendar year, such payment shall be made on the immediately preceding Business Day, in each case with the same force and effect as if made on such Series D Dividend Payment Date. The term "business day" means any day other than a day on which banking institutions in the state of Delaware or the Commonwealth of Pennsylvania are authorized or required to close. Each such dividend shall be paid to the holders of record of shares of Series D as they appear on the stock register of the Association at the close of business on the Business Day immediately preceding each Series D Dividend Payment Date.

(c) Dividends shall be non-cumulative. If the Board of Directors of the Association fails to declare a dividend on Series D for a Series D Dividend Period, then holders of the shares of Series D will have no right to receive a dividend for that Series D Dividend Period, and the Association will have no obligation to pay a dividend for that Series D Dividend Period, whether or not dividends are declared and paid for future Series D Dividend Periods with respect to Series D or any other series of capital stock of the Association.

(d) If full dividends on Series D for the then current Series D Dividend Period shall not have been declared and paid when due, or declared and a sum sufficient for the payment thereof set apart for payment at the time due for payment, no dividends shall be declared or paid or set apart for payment and no other distribution shall be declared or made or set apart for payment upon the Common Stock or any other Series D Junior Securities, nor shall any Common Stock, any other Series D Junior Securities or any Series D Parity Securities be redeemed, purchased or otherwise acquired for any consideration (or any monies be paid to or made available to a sinking fund for such purpose) by the Association (except by conversion into or exchange for other Series D Junior Securities).

(e) When dividends are not paid in full (or a sum sufficient for such full payment is not set apart) upon Series D or any Series D Parity Securities, all dividends declared upon Series D and the Series D Parity Securities shall be declared *pro rata* so that the amount of dividends declared per share on Series D and the Series D Parity Securities shall in all cases bear to each other the same ratio that full dividends per share on Series D for the then-current Series D Dividend Period (which shall not include any accumulation in respect of unpaid dividends for

8

prior Series D Dividend Periods) and full dividends per share, including required or permitted accumulations, if any, on the Series D Parity Securities bear to each other.

(f) Holders of the shares of Series D shall not be entitled to any dividend, whether payable in cash, property or stock, in excess of full dividends, as herein provided. No interest, or sum of money in lieu of interest, shall be payable in respect of any dividend payment or payments on the shares of Series D which may be in arrears.

(g) Dividends payable on Series D for any period less than a Series D Semi-Annual Dividend Period, including the Series D Initial Dividend Period, shall be computed on the basis of a 360-day year consisting of twelve 30-day months and the actual number of days. Dividends payable on Series D for each Series D Semi-Annual Dividend Period shall be computed by dividing the annual dividend rate by four.

4. Redemption.

(a) With the prior approval of the Office of the Comptroller of the Currency, shares of Series D are redeemable at any time, in whole or in part, provided that dividends thereon shall have been declared for the Series D Dividend Period in which the redemption date occurs to (but excluding) the redemption date (but without accumulation in respect of dividends for any prior Series D Dividend Periods). Such redemption shall be at a redemption price of $100,000 per share and shall be paid together with any declared and unpaid dividends. Any redemption of less than all the outstanding shares of Series D may be accomplished on a *pro rata* basis, by lot or by any other equitable means determined by the Association; provided, however, that no redemption shall be accomplished in a manner such that any holder would hold less than one share of Series D.

(b) In the event the Association shall elect to redeem the shares of Series D, the Association shall give notice to the holders of record not less than 10 nor more than 60 days prior to such redemption, by first class mail, postage prepaid, at their addresses as shown on the stock register of the Association, that the shares of Series D are to be redeemed. Each such notice shall state: (i) the redemption date; (ii) the redemption price; (iii) the place or places where certificates for such shares are to be surrendered for payment of the redemption price; and (iv) that dividends on the shares of Series D will cease to accrue on the redemption date.

(c) Notice having been mailed as aforesaid, from and after the applicable redemption date (unless default shall be made by the Association in providing money for the payment of the redemption price), dividends on the shares of Series D shall cease to accrue, and said shares shall no longer be deemed to be outstanding, and all rights of the holders thereof as shareholders of the Association (except the right to receive from the Association the redemption price) shall cease. Upon surrender of the certificates for any shares so redeemed (properly endorsed or assigned for transfer, if the Board of Directors shall so require and the notice shall so state), such shares shall be redeemed by the Association at the redemption price aforesaid.

(d) Any shares of Series D which shall at any time have been redeemed shall, after such redemption, be cancelled and may not be reissued.

(e) In the event that fewer than all the outstanding shares of Series D are to be redeemed, such shares shall be redeemed Pro Rata from each Holder of Series D.

5. <u>Liquidation Rights</u>.

(a) Upon the voluntary or involuntary liquidation, dissolution or winding up of the Association, the holders of the shares of Series D shall be entitled to receive and to be paid out of the assets of the Association available for distribution to its shareholders, before any payment of distribution shall be made in respect of the Common Stock or any other Series D Junior Securities, or to any affiliate of the Association, a liquidating distribution in an amount in cash equal to $100,000 per share of Series D, plus accumulated and unpaid dividends thereon for the Series D Dividend Period in which such payment is made to (but excluding) the date on which such payment is made available (but without accumulation in respect of dividends for any prior Series D Dividend Periods).

(b) After the payment to the holders of the shares of Series D of the full amount of the liquidating distribution to which they are entitled under this Section (B)(5), the holders of shares of Series D as such shall have no right or claim to any of the remaining assets of the Association.

(c) If, upon any voluntary or involuntary liquidation, dissolution or winding up of the Association, the amounts payable with respect to any liquidating distributions relating to the shares of Series D and any Series D Parity Securities which are not paid in full, the holders of the shares of Series D and the Series D Parity Securities will share ratably in any such distribution of assets of the Association in proportion to the full respective liquidating distributions to which they are entitled.

(d) Neither the voluntary sale, conveyance, exchange or transfer (for cash, shares of stock, securities or other consideration) of all or substantially all of the property and assets of the Association, nor the merger or consolidation of the Association with or into any one or more other persons, shall be deemed to be a voluntary or involuntary liquidation, dissolution or winding up for the purposes of this Section (B)(5), unless such voluntary sale, conveyance, exchange or transfer shall be in connection with a plan of liquidation, dissolution or winding up of the Association.

6. <u>Issuance Only Upon Conversion</u>.

(a) Subject to the terms and conditions of this Section (B)(6), each share of Series D will not be available to be issued for cash or any other consideration, but shall be issued only in the event the Company Preferred Securities ("CSLLCII Preferred Securities") of PNC Bank Capital Securities II, LLC ("CSLLCII"), a Delaware limited liability company, are converted pursuant to an Optional Conversion Right (as defined in the Limited Liability Company Agreement of CSLLCII, dated as of June 10, 2004 (the "CSLLCII Agreement")) or in the event of a Mandatory Conversion (as defined in the CSLLCII Agreement) into shares of Series D, in accordance with the terms thereof.

(b) Upon such a conversion as in (B)(6)(a), the Association shall be unconditionally obligated to issue, to each holder of CSLLC II Preferred Securities, one share of Series D for each surrendered share of CSLLC II Preferred Securities.

7. <u>Conversion</u>. The holders of shares of Series D shall not have any rights to convert such shares into shares of any other class or series of securities of the Association.

8. <u>Voting Rights</u>. Except as expressly required by law, the holders of shares of Series D shall have no voting power, and no right to vote on any matter at any time, either as a separate series or class or together with any other series or class of shares, and shall not be entitled to call a meeting of such holders for any purpose, nor shall they be entitled to participate in any meeting of the holders of the Common Stock. Notwithstanding the foregoing, no amendment may be made to the Articles of Association of the Association that would adversely affect the relative rights and preferences of Series D in any material respect, including, without limitation, the issuance of Series D Senior Securities at any time when shares of Series D are issued and outstanding, without the consent of the holders of 66 2/3% of the outstanding shares of Series D not held by the Association or its affiliates; provided, however that neither the authorization nor issuance of Series D Junior Securities, Series D Parity Securities or, at a time when no shares of Series D are issued and outstanding, Series D Senior Securities shall be deemed to be adverse to the Series D for purposes of this Section (B)(8).

9. <u>Legend</u>. Shares of the Series D will bear a legend substantially in the form of the following legend on the face thereof:

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY STATE SECURITIES LAWS OR ANY OTHER APPLICABLE SECURITIES LAW. NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE OFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, SUCH REGISTRATION.

C.    <u>Description and Designation of Series E Preferred Stock</u>

The 5,000 shares of Series E preferred stock shall be subject to the following designation, preferences, dividend, sinking fund, redemption, liquidation, conversion, voting and other rights, provided that no such terms shall provide for payment, upon liquidation, of any premium over and above the stated value plus declared but unpaid dividends on such preferred stock:

1. <u>Designation</u>. The designation of Series E preferred stock shall be Series E 6.15% Non-cumulative Preferred Stock (hereinafter referred to as "Series E") and the number of shares constituting Series E shall be 5,000 shares. Shares of Series E shall have a stated value of $100,000 per share. The number of authorized shares of Series E shall not be increased.

2. <u>Ranking</u>. The shares of Series E shall rank:

(a) senior, as to dividends or upon liquidation, dissolution and winding up, to the Common Stock, and senior, as to dividends or upon liquidation, dissolution and winding up, to

11

all other classes and series of capital stock of the Association now or hereafter authorized, issued or outstanding that, by their terms, expressly provide that they are junior, as to dividends or upon liquidation, dissolution and winding up, as the case may be, or which do not specify their rank (collectively, "Series E Junior Securities"); and

(b) on a parity, as to dividends or upon liquidation, dissolution and winding up, with the Series C, Series D and Series F and with each class or series of capital stock of the Association now or hereafter authorized, issued or outstanding that, by their terms, expressly provide that such class or series shall rank on a parity with the shares of Series E, as to dividends or upon liquidation, dissolution and winding up, as the case may be (collectively, "Series E Parity Securities"); and

(c) junior, as to dividends or upon liquidation, dissolution and winding up, with each class or series of capital stock of the Association now or hereafter authorized, issued or outstanding that, by their terms, expressly provide that such class or series shall rank senior to the shares of Series E as to dividends or upon liquidation, dissolution and winding up, as the case may be (collectively, "Series E Senior Securities").

Notwithstanding the foregoing, at any time when shares of Series E are issued and outstanding, any Series E Senior Securities issued without the requisite approval of holders of shares of Series E pursuant to Section (C)(7) hereof, if such approval is required thereunder, shall be deemed to be Series E Parity Securities, rather than Series E Senior Securities.

3. <u>Dividend Rights</u>.

(a) Dividends (if declared in accordance with Section (C)(3)(b) below) shall be payable in cash on the shares of Series E at a rate per annum equal to 6.15% of the stated value thereof for the period commencing on the date of original issuance of the shares and ending on, but excluding, the next succeeding March 15, June 15, September 15, or December 15, whichever date first follows the original issuance (the "Series E Initial Dividend Period"), and each quarterly dividend period thereafter (each a "Series E Quarterly Dividend Period"), which Series E Quarterly Dividend Periods shall commence on March, 15, June 15, September 15, and December 15 in each year, and shall end on and include the day next preceding the first day of the next Series E Quarterly Dividend Period (the Series E Initial Dividend Period and each Series E Quarterly Dividend Period shall be herein referred to individually as a "Series E Dividend Period" and collectively as "Series E Dividend Periods").

(b) Dividends at the rate specified in Section (C)(3)(a) above shall be payable, when, as and if declared by the Board of Directors of the Association, on March 15, June 15, September 15, or December 15 of each year (each a "Series E Dividend Payment Date"), commencing with the first Series E Dividend Payment Date that occurs after the shares of Series E have been issued; provided, however, that if a Series E Dividend Payment Date falls on a day that is not a business day, dividends (if declared) shall be paid on the next succeeding business day, with the same force and effect as if made on such Series E Dividend Payment Date. The term "business day" means any day other than a day on which banking institutions in the Commonwealth of Pennsylvania are authorized or required to close. Each such dividend shall be paid to the holders of record of shares of Series E as they appear on the stock register of the

Association at the close of business on the Business Day immediately preceding each Series E Dividend Payment Date.

(c) Dividends shall be non-cumulative. If the Board of Directors of the Association fails to declare a dividend on Series E for a Series E Dividend Period, then holders of the shares of Series E will have no right to receive a dividend for that Series E Dividend Period, and the Association will have no obligation to pay a dividend for that Series E Dividend Period, whether or not dividends are declared and paid for future Series E Dividend Periods with respect to Series E or any other series of capital stock of the Association.

(d) If full dividends on Series E for the then current Series E Dividend Period shall not have been declared and paid when due, or declared and a sum sufficient for the payment thereof set apart for payment at the time due for payment, no dividends shall be declared or paid or set apart for payment and no other distribution shall be declared or made or set apart for payment upon the Common Stock or any other Series E Junior Securities, nor shall any Common Stock, any other Series E Junior Securities or any Series E Parity Securities be redeemed, purchased or otherwise acquired for any consideration (or any monies be paid to or made available to a sinking fund for such purpose) by the Association (except by conversion into or exchange for other Series E Junior Securities).

(e) When dividends are not paid in full (or a sum sufficient for such full payment is not set apart) upon Series E or any Series E Parity Securities, all dividends declared upon Series E and the Series E Parity Securities shall be declared *pro rata* so that the amount of dividends declared per share on Series E and the Series E Parity Securities shall in all cases bear to each other the same ratio that full dividends per share on Series E for the then-current Series E Dividend Period (which shall not include any accumulation in respect of unpaid dividends for prior Series E Dividend Periods) and full dividends per share, including required or permitted accumulations, if any, on the Series E Parity Securities bear to each other.

(f) Holders of the shares of Series E shall not be entitled to any dividend, whether payable in cash, property or stock, in excess of full dividends, as herein provided. No interest, or sum of money in lieu of interest, shall be payable in respect of any dividend payment or payments on the shares of Series E which may be in arrears.

(g) Dividends payable on Series E for any period less than a Series E Quarterly Dividend Period, including the Series E Initial Dividend Period, shall be computed on the basis of a 360-day year consisting of twelve 30-day months and the actual number of days. Dividends payable on Series E for each Series E Semi-Annual Dividend Period shall be computed by dividing the annual dividend rate by four.

4. Redemption.

(a) With the prior approval of the Office of the Comptroller of the Currency, shares of Series E are redeemable at any time, in whole or in part, provided that dividends thereon shall have been declared for the Series E Dividend Period in which the redemption date occurs to (but excluding) the redemption date (but without accumulation in respect of dividends for any prior Series E Dividend Periods). Such redemption shall be at a redemption price of

13

$100,000 per share and shall be paid together with any declared and unpaid dividends. Any redemption of less than all the outstanding shares of Series E may be accomplished on a *pro rata* basis, by lot or by any other equitable means determined by the Association; provided, however, that no redemption shall be accomplished in a manner such that any holder would hold less than one share of Series E.

(b) In the event the Association shall elect to redeem the shares of Series E, the Association shall give notice to the holders of record not less than 10 nor more than 60 days prior to such redemption, by first class mail, postage prepaid, at their addresses as shown on the stock register of the Association, that the shares of Series E are to be redeemed. Each such notice shall state: (i) the redemption date; (ii) the redemption price; (iii) the place or places where certificates for such shares are to be surrendered for payment of the redemption price; and (iv) that dividends on the shares of Series E will cease to accrue on the redemption date.

(c) Notice having been mailed as aforesaid, from and after the applicable redemption date (unless default shall be made by the Association in providing money for the payment of the redemption price), dividends on the shares of Series E shall cease to accrue, and said shares shall no longer be deemed to be outstanding, and all rights of the holders thereof as shareholders of the Association (except the right to receive from the Association the redemption price) shall cease. Upon surrender of the certificates for any shares so redeemed (properly endorsed or assigned for transfer, if the Board of Directors shall so require and the notice shall so state), such shares shall be redeemed by the Association at the redemption price aforesaid.

(d) Any shares of Series E which shall at any time have been redeemed shall, after such redemption, be cancelled and may not be reissued.

5. <u>Liquidation Rights</u>.

(a) Upon the voluntary or involuntary liquidation, dissolution or winding up of the Association, the holders of the shares of Series E shall be entitled to receive and to be paid out of the assets of the Association available for distribution to its shareholders, before any payment of distribution shall be made in respect of the Common Stock or any other Series E Junior Securities, or to any affiliate of the Association, a liquidating distribution in an amount in cash equal to $100,000 per share of Series E, plus accumulated and unpaid dividends thereon for the Series E Dividend Period in which such payment is made to (but excluding) the date on which such payment is made available (but without accumulation in respect of dividends for any prior Series E Dividend Periods).

(b) After the payment to the holders of the shares of Series E of the full amount of the liquidating distribution to which they are entitled under this Section (C)(5), the holders of shares of Series E as such shall have no right or claim to any of the remaining assets of the Association.

(c) If, upon any voluntary or involuntary liquidation, dissolution or winding up of the Association, the amounts payable with respect to any liquidating distributions relating to the shares of Series E and any Series E Parity Securities which are not paid in full, the holders of the shares of Series E and the Series E Parity Securities will share ratably in any such distribution of

14

assets of the Association in proportion to the full respective liquidating distributions to which they are entitled.

(d) Neither the voluntary sale, conveyance, exchange or transfer (for cash, shares of stock, securities or other consideration) of all or substantially all of the property and assets of the Association, nor the merger or consolidation of the Association with or into any one or more other persons, shall be deemed to be a voluntary or involuntary liquidation, dissolution or winding up for the purposes of this Section (C)(5), unless such voluntary sale, conveyance, exchange or transfer shall be in connection with a plan of liquidation, dissolution or winding up of the Association.

6. _Conversion_. The holders of shares of Series E shall not have any rights to convert such shares into shares of any other class or series of securities of the Association.

7. _Voting Rights_. Except as expressly required by law, the holders of shares of Series E shall have no voting power, and no right to vote on any matter at any time, either as a separate series or class or together with any other series or class of shares, and shall not be entitled to call a meeting of such holders for any purpose, nor shall they be entitled to participate in any meeting of the holders of the Common Stock. Notwithstanding the foregoing, no amendment may be made to the Articles of Association of the Association that would adversely affect the relative rights and preferences of Series E in any material respect, including, without limitation, the issuance of Series E Senior Securities at any time when shares of Series E are issued and outstanding, without the consent of the holders of 66 2/3% of the outstanding shares of Series E not held by the Association or its affiliates; provided, however that neither the authorization nor issuance of Series E Junior Securities, Series E Parity Securities or, at a time when no shares of Series E are issued and outstanding, Series E Senior Securities shall be deemed to be adverse to the Series E for purposes of this Section (C)(7).

8. _Legend_. Shares of the Series E will bear a legend substantially in the form of the following legend on the face thereof:

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY STATE SECURITIES LAWS OR ANY OTHER APPLICABLE SECURITIES LAW. NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE OFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, SUCH REGISTRATION.

D. _Description and Designation of Series F Preferred Stock_

The 5,000 shares of Series F preferred stock shall be subject to the following designation preferences, dividend, sinking fund, redemption, liquidation, conversion, voting and other rights, provided that no such terms shall provide for payment, upon liquidation, of any premium over and above the stated value plus declared but unpaid dividends on such preferred stock:

15

1.    Designation.  The designation of Series F preferred stock shall be Series F Non-cumulative Perpetual Fixed-to-Floating Rate Preferred Stock (hereinafter referred to as "Series F Preferred Stock") and the number of shares constituting Series F Preferred Stock shall be 5,000 shares.  Shares of Series F Preferred Stock shall have $1.00 par value per share and shall have a liquidation preference of $100,000 per share.

2.    Issuance upon Conditional Exchange.

(a)    The shares of Series F Preferred Stock shall be issued only upon direction by the United States Office of the Comptroller of the Currency (together with any successor United States federal bank regulatory authority that is the primary supervisory agency for the Association, the "OCC") to exchange the Fixed-to-Floating Rate Non-cumulative Exchangeable Perpetual Trust Securities, liquidation preference $100,000 per security (the "Trust Securities"), of PNC Preferred Funding Trust I, a Delaware statutory trust ("PNC Delaware"), on a security-for-security basis, for the Series F Preferred Stock (a "Conditional Exchange"), in connection with the occurrence of one of the following:  (i) the Association becomes "undercapitalized" under the OCC's "prompt corrective action" regulations, (ii) the Association is placed into conservatorship or receivership or (iii) the OCC, in its sole discretion, anticipates the Association becoming "undercapitalized" in the near term or takes supervisory action that limits the payment of dividends by the Association (each of (i) through (iii), a "Conditional Exchange Event").

(b) The Conditional Exchange will occur as of 8:00 A.M. New York time, on the date for such exchange set forth in the applicable OCC directive, or, if such date is not set forth in the directive, as of 8:00 A.M., New York time, on the earliest possible date such exchange could occur consistent with the directive, as determined by the Association and as evidenced by the issuance by the Association of a press release prior to such time.

(c)    The Association will mail notice of the issuance of an OCC directive after the occurrence of a Conditional Exchange Event to each holder of Trust Securities within 30 days, and the Association will deliver (or cause to be delivered) to each such holder Series F Preferred Stock upon surrender of the Trust Securities.

3.    Ranking.  The shares of Series F Preferred Stock shall rank:

(a)    senior, as to dividends or upon liquidation, dissolution and winding up, to the Common Stock, and senior, as to dividends or upon liquidation, dissolution and winding up, to all other classes and series of capital stock of the Association now or hereafter authorized, issued or outstanding that, by their terms, do not expressly provide that they rank *pari passu* with the Series F Preferred Stock as to dividends or upon liquidation, dissolution and winding up, as the case may be (collectively, "Series F Junior Securities"); and

(b)    on a parity, as to dividends or upon liquidation, dissolution and winding up with the Series C, Series D and Series E, and with each class or series of preferred capital stock of the Association hereafter authorized, issued or outstanding which specify that they are *pari passu* with the Series F Preferred Stock (collectively, "Series F Parity Securities").

The Association may authorize and issue additional shares of Series F Junior Securities and Series F Parity Securities without the consent of the holders of the Series F Preferred Stock. The holders of shares of Series F Preferred Stock will have no preemptive rights with respect to any shares of the Association's capital stock or any of its other securities convertible into or carrying rights or options to purchase any such capital stock.

4. <u>Dividend Rights.</u>

(a) Dividends on the Series F Preferred Stock, if, when and as declared by the Association's Board of Directors out of its legally available funds, will be payable on each Series F Dividend Payment Date on a non-cumulative basis at an annual rate of 6.517% to, but not including, March 15, 2012 (whether or not a Business Day) if issued before March 15, 2012 and 3-Month USD LIBOR plus 1.65% on March 15, 2012 and thereafter on the liquidation preference thereof, which is $100,000 per share, from and including the date of its issuance.

(b) Dividends on the Series F Preferred Stock, if, when and as declared by the Association's Board of Directors, will be payable on March 15th, June 15th, September 15th and December 15th of each year, or if any such day is not a Business Day, the next Business Day (each, a "Series F Dividend Payment Date"). If no shares of Series F Preferred Stock have been issued prior to March 15, 2012, a Series F Dividend Payment Date shall be deemed to have occurred on the date of issuance, if such issuance date is a distribution payment date with respect to the Trust Securities or, if such issuance date is not a distribution payment date with respect to the Trust Securities, on the immediately preceding distribution payment date with respect to the Trust Securities for purposes of determining the dividend rate.

(c) Each period from and including a Series F Dividend Payment Date (or the date of issuance of the Series F Preferred Stock) to but excluding the following Series F Dividend Payment Date is referred to herein as a "Series F Dividend Period," except that if the Series F Preferred Stock is outstanding on March 15, 2012, the Series F Dividend Period ending in March 2012 shall be to but not including March 15, 2012 (whether or not a Business Day) and the Series F Dividend Period ending in June 2012 shall commence on March 15, 2012 (whether or not a Business Day). Dividends payable on the Series F Preferred Stock will be computed on the basis of (x) for any Series F Dividend Periods ending prior to the Series F Dividend Payment Date in March 2012, twelve 30-day months, a 360-day year, and the actual number of days elapsed in the period, and (y) for any Series F Dividend Period thereafter, the actual number of days in the relevant period divided by 360. No interest will be paid on any dividend payment on the Series F Preferred Stock.

(d) The record date for the payment of dividends, if declared, will be the first day of the month in which the relevant Series F Dividend Payment Date occurs or, if any such day is not a Business Day, the first Business Day thereafter.

(e) Dividends on the Series F Preferred Stock are non-cumulative. If the Association's Board of Directors does not declare a dividend on the Series F Preferred Stock or declares less than a full dividend in respect of any Series F Dividend Period, the holders of the Series F Preferred Stock will have no right to receive any dividend or a full dividend, as the case may be, for the Series F Dividend Period, and the Association will have no obligation to pay a

17

dividend or to pay full dividends for that Series F Dividend Period, whether or not the earnings of the Association were sufficient to pay such dividends in whole or in part and whether or not dividends are declared and paid for any future Series F Dividend Period with respect to the Series F Preferred Stock, the Association's common stock or any other class or series of the Association's preferred stock.

(f)     If full dividends on the Series F Preferred Stock for the then current Series F Dividend Period shall not have been declared and paid when due, or declared and a sum sufficient for the payment thereof set apart for payment at the time due for payment, no dividends shall be declared or paid or set apart for payment and no other distribution shall be declared or made or set apart for payment upon the Common Stock or any other Series F Junior Securities (other than distributions payable in Common Stock or Series F Junior Securities), nor shall any Common Stock, any other Series F Junior Securities or any Series F Parity Securities be redeemed, purchased or otherwise acquired for any consideration (or any monies be paid to or made available to a sinking fund for such purpose) by the Association (except as a result of reclassification of Series F Junior Securities for or into other Series F Junior Securities, or by conversion into or exchange for other Series F Junior Securities).

(g)     When dividends are not paid in full (or a sum sufficient for such full payment is not set apart) upon the Series F Preferred Stock or any Series F Parity Securities, all dividends declared upon the Series F Preferred Stock and the Series F Parity Securities shall be declared *pro rata* so that the amount of dividends declared per share on the Series F Preferred Stock and the Series F Parity Securities shall in all cases bear to each other the same ratio that full dividends per share on the Series F Preferred Stock for the then-current Series F Dividend Period (which shall not include any accumulation in respect of unpaid dividends for prior Series F Dividend Periods) and full dividends per share, including required or permitted accumulations, if any, on the Series F Parity Securities bear to each other.

(h)     Holders of shares of the Series F Preferred Stock shall not be entitled to any dividend, whether payable in cash, property or stock, in excess of full dividends, as herein provided. No interest, or sum of money in lieu of interest, shall be payable in respect of any dividend payment or payments on the shares of the Series F Preferred Stock which may be in arrears.

5.     Redemption.

(a)     Shares of Series F Preferred Stock are not redeemable at the option of the holders thereof. Shares of Series F Preferred Stock are redeemable:

(i)     in whole but not in part, on any Series F Dividend Payment Date prior to the Series F Dividend Payment Date in March 2012 upon the occurrence of a Regulatory Capital Event or a Rating Agency Event, at a cash redemption price equal to the sum of: (A) the greater of: (1) $100,000 per share of Series F Preferred Stock or (2) the sum of present values of $100,000 per share of Series F Preferred Stock and all undeclared dividends for the Series F Dividend Periods from the redemption date to and including the Series F Dividend Payment Date in March 2012, discounted to the redemption date on a quarterly basis (assuming a

18

360-day year consisting of twelve 30-day months) at the Treasury Rate, as calculated by an Independent Investment Banker, *plus* 0.50%; *plus* (B) any declared and unpaid dividends to the redemption date;

(ii)    in whole but not in part, on any Series F Dividend Payment Date prior to the Series F Dividend Payment Date in March 2012 for any reason other than a Regulatory Capital Event or a Rating Agency Event, at a cash redemption price equal to the sum of: (A) the greater of (1) $100,000 per share of Series F Preferred Stock or (2) the sum of present values of $100,000 per share of Series F Preferred Stock and all undeclared dividends for the Series F Dividend periods from the redemption date to and including the Series F Dividend Payment Date in March 2012, discounted to the redemption date on a quarterly basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate, as calculated by an Independent Investment Banker, *plus* 0.35%; *plus* (B) any declared and unpaid dividends to the redemption date;

(iii)    in whole, but not in part, on any Series F Dividend Payment Date after the Series F Dividend Payment Date in March 2012 that is not a Five Year Date upon the occurrence of a Regulatory Capital Event, at a cash redemption price equal to $100,000 per share of Series F Preferred Stock, *plus* any declared and unpaid dividends to the redemption date;

(iv)    in whole but not in part, on any Series F Dividend Payment after the Series F Dividend Payment Date in March 2012 that is not a Five Year Date for any reason other than a Regulatory Capital Event, at a cash redemption price equal to the sum of: (A) the greater of (1) $100,000 per share of Series F Preferred Stock or (2) the sum of present values of $100,000 per share of Series F Preferred Stock and all undeclared dividends for the Series F Dividend Periods from the redemption date to and including the next succeeding Five Year Date, discounted to the redemption date on a quarterly basis (assuming a 360-day year consisting of twelve 30-day months) at the 3-Month USD LIBOR rate applicable to the Series F Dividend Period immediately preceding such redemption date, as calculated by an Independent Investment Banker; *plus* (B) any declared and unpaid dividends to the redemption date; or

(v)    in whole or in part, on each Series F Dividend Payment Date that is a Five Year Date, at a cash redemption price of $100,000 per share of Series F Preferred Stock, *plus* any declared and unpaid dividends to the redemption date,

in each case, without accumulation of any undeclared dividends on the Series F Preferred Stock with respect to Series F Dividend Payment Dates prior to the redemption date.

(b)    Capitalized terms used but not otherwise defined herein shall have the following meanings with respect to shares of Series F Preferred Stock:

19

(i)     "Business Day" means any day other than a Saturday, Sunday or any other day on which the banks in New York, New York, Pittsburgh, Pennsylvania or Wilmington, Delaware are generally required or authorized by law to be closed.

(ii)    "Comparable Treasury Issue" means the United States Treasury security selected by the Independent Investment Banker as having a maturity comparable to the term remaining to the Series F Dividend Payment Date in March 2012 that would be utilized, at the time of selection and in accordance with customary financial practice, in pricing new issues of perpetual preferred securities having similar terms as the Series F Preferred Stock with respect to the payment of dividends and distributions of assets upon liquidation, dissolution or winding up of the issuer of such preferred stock.

(iii)   "Comparable Treasury Price" means with respect to any redemption date for the shares of Series F Preferred Stock, the average of the Reference Treasury Dealer Quotations for such redemption date, after excluding the highest and lowest of such Reference Treasury Dealer Quotations, or if the Independent Investment Banker obtains fewer than five such Reference Treasury Dealer Quotations, the average of all such quotations.

(iv)    "Five Year Date" means the Series F Dividend Payment Date in March 2012 and the Series F Dividend Payment Date in March of each fifth succeeding year.

(v)     "Independent Investment Banker" means an independent investment banking institution of national standing appointed by the Association.

(vi)    "LIBOR Business Day" means any day on which commercial banks are open for general business (including dealings in deposits in U.S. dollars) in London.

(vii)   "LIBOR Determination Date" means, as to each Series F Dividend Period, the date that is two LIBOR Business Days prior to the first day of such Series F Dividend Period.

(viii)  "Rating Agency" means, at any time, Standard & Poor's Rating Services, a division of the McGraw Hill Companies, Inc., Moody's Investor Services, Inc. and Fitch, Inc., but only in the case of each such agency if it is rating the relevant security, including the Series F Preferred Stock, at the time or, if none of them is providing a rating for the relevant security, including the Series F Preferred Stock, at such time, then any "nationally recognized statistical rating organization" as that phrase is defined for purposes of Rule 436(g)(2) under the Securities Act of 1933, as amended, which is rating such relevant security.

(ix)    "Rating Agency Event" occurs when the Association reasonably determines that an amendment, clarification or change has occurred in the equity criteria for securities such as the Series F Preferred Stock of any Rating Agency that then publishes a rating for The PNC Financial Services Group, Inc. which amendment, clarification or change results in a lower equity credit for The PNC Financial Services Group, Inc. or the Association than the respective equity credit assigned by such Rating Agency to securities such as the Series F Preferred Stock on the date of issuance of the Trust Securities.

(x)    "Reference Treasury Dealer" means each of three primary U.S. government securities dealers (each a "Primary Treasury Dealer"), as specified by the Association; provided that if any Primary Treasury Dealer as specified by the Association ceases to be a Primary Treasury Dealer, the Association will substitute for such Primary Treasury Dealer another Primary Treasury Dealer and if the Association fails to select a substitute within a reasonable period of time, then the substitute will be a Primary Treasury Dealer selected by the Independent Investment Banker after consultation with the Association.

(xi)    "Reference Treasury Dealer Quotations" means, with respect to the Reference Treasury Dealer and any redemption date, the average, as determined by the Independent Investment Banker, of the bid and asked prices for the Comparable Treasury Issue (expressed, in each case, as a percentage of its principal amount) quoted in writing to the Independent Investment Banker by such Reference Treasury Dealer at 5:00 p.m., New York City time, on the third Business Day preceding such redemption date.

(xii)    "Regulatory Capital Event" occurs when the Association determines, based upon receipt of an opinion of counsel, rendered by a law firm experienced in such matters, in form and substance reasonably satisfactory to the Association, which states that there is a significant risk that:  (A) the Series F Preferred Stock will no longer be of a type that constitutes Tier 1 capital of the Association for purposes of the OCC's risk-based guidelines applicable to national banks (without giving effect to quantitative limits on the components of Tier 1 capital) or (B) that the Series F Preferred Stock will not be of a type that constitutes Tier 1 capital of The PNC Financial Services Group, Inc. under the risk-based capital guidelines of the Federal Reserve Board applicable to bank holding companies (without giving effect to quantitative limits on the components of Tier 1 capital), as a result of (1) any amendment to, clarifications of, or change in applicable laws or related regulations, guidelines, policies or official interpretations thereof, or (2) any official administrative pronouncement or judicial decisions interpreting or applying such laws or related regulations, guidelines, policies or official interpretations thereof.

(xiii)    "3-Month USD LIBOR" means, with respect to any Series F Dividend Period, a rate determined on the basis of the offered rates for three-

month U.S. dollar deposits of not less than a principal amount equal to that which is representative for a single transaction in such market at such time, commencing on the first day of such Series F Dividend Period, which appears on US LIBOR Telerate Page 3750 as of approximately 11:00 a.m., London time, on the LIBOR Determination Date for such Series F Dividend Period. If on any LIBOR Determination Date no rate appears on US LIBOR Telerate Page 3750 as of approximately 11:00 a.m., London time, the Association will on such LIBOR Determination Date request four major reference banks in the London interbank market selected by the Association to provide the Association with a quotation of the rate at which three-month deposits in U.S. dollars, commencing on the first day of such Series F Dividend Period, are offered by them to prime banks in the London interbank market as of approximately 11:00 a.m., London time, on such LIBOR Determination Date and in a principal amount equal to that which is representative for a single transaction in such market at such time. If at least two such quotations are provided, 3-Month USD LIBOR for such Series F Dividend Period will be the arithmetic mean (rounded upward if necessary to the nearest .00001 of 1%) of such quotations as calculated by the Association. If fewer than two quotations are provided, 3-Month USD LIBOR for such Series F Dividend Period will be the arithmetic mean (rounded upward if necessary to the nearest .00001 of 1%) of the rates quoted as of approximately 11:00 a.m., New York time, on the first day of such Series F Dividend Period by three major banks in New York, New York selected by the Association for loans in U.S. dollars to leading European banks, for a three-month period commencing on the first day of such Series F Dividend Period and in a principal amount of not less than $1,000,000.

(xiv)   "Treasury Rate" means the rate per year equal to the quarterly equivalent yield to maturity of the Comparable Treasury Issue, calculated using a price for the Comparable Treasury Issue (expressed as a percentage of its principal amount) equal to the Comparable Treasury Price for such redemption date. The Treasury Rate will be calculated on the third Business Day preceding the redemption date.

(xv)   "U.S. LIBOR Telerate Page 3750" means the display page of Moneyline's Telerate Service designated as 3750 (or such other page as may replace that page on that service, or such other service as may be nominated as the information vendor, for the purpose of displaying rates comparable to 3-Month USD LIBOR).

(c)   In the event the Association shall elect to redeem the shares of Series F Preferred Stock, the Association shall give notice to the holders of record not less than 30 nor more than 60 days prior to such redemption, by first class mail, postage prepaid, at their addresses as shown on the stock register of the Association, that the shares of Series F Preferred Stock are to be redeemed. Each such notice shall state: (i) the redemption date; (ii) the redemption price; (iii) the place or places where certificates for such shares are to be surrendered

for payment of the redemption price; and (iv) that dividends on the shares of Series F Preferred Stock will not be declared after the redemption date.

(d)     Notice having been mailed as aforesaid, from and after the applicable redemption date (unless default shall be made by the Association in providing money for the payment of the redemption price), dividends on the shares of Series F Preferred Stock called for redemption will not be declared and shall cease to accrue after the redemption date, and said shares shall no longer be deemed to be outstanding, and all rights of the holders thereof as shareholders of the Association (except the right to receive from the Association the redemption price) shall cease. Upon surrender of the certificates for any shares so redeemed (properly endorsed or assigned for transfer, if the Board of Directors shall so require and the notice shall so state), such shares shall be redeemed by the Association at the redemption price aforesaid.

(e)     Any shares of Series F Preferred Stock which shall at any time have been redeemed shall, after such redemption, be cancelled and may not be reissued.

(f)     In the event that fewer than all outstanding shares of Series F Preferred Stock are to be redeemed, such shares shall be redeemed on a *pro rata* basis, by lot or by any other equitable means determined by the Association.

(g)     The Series F Preferred Stock is not subject to any sinking fund or other obligation for its repurchase or retirement.

(h)     The Series F Preferred Stock shall be perpetual unless redeemed by the Association in accordance with this Section (D)(5).

6.     Liquidation.

(a)     In the event the Association voluntarily or involuntarily liquidates, dissolves or winds up, the holders of Series F Preferred Stock at the time outstanding will be entitled to receive liquidating distributions in the amount of $100,000 per share, plus an amount equal to declared but unpaid dividends for the current Series F Dividend Period to the date of liquidation, out of the Association's assets legally available for distribution to its shareholders, before any distribution of assets is made to holders of the Association's common stock or any Series F Junior Securities and subject to the rights of the holders of any Series F Parity Securities and the rights of its depositors and creditors.

(b)     After payment of the full amount of the liquidating distributions to which they are entitled, the holders of the Series F Preferred Stock will have no right or claim to any of the Association's remaining assets. In the event that, upon any such voluntary or involuntary liquidation, dissolution, or winding up, the Association's available assets are insufficient to pay the amount of the liquidation distributions on all outstanding Series F Preferred Stock and the corresponding amounts payable on any Series F Parity Securities, then the holders of the Series F Preferred Stock and any Series F Parity Securities will share ratably in any such distribution of assets in proportion to the full liquidating distributions to which they would otherwise be respectively entitled.

23

(c)     Neither the voluntary sale, conveyance, exchange or transfer (for cash, shares of stock, securities or other consideration) of all or substantially all of the property and assets of the Association, nor the merger or consolidation of the Association with or into any one or more other persons, shall be deemed to be a voluntary or involuntary liquidation, dissolution or winding up for the purposes of this Section (D)(6), unless such voluntary sale, conveyance, exchange or transfer shall be in connection with a plan of liquidation, dissolution or winding up of the Association.

7.     <u>Conversion rights</u>.  The holders of shares of Series F Preferred Stock shall not have any rights to convert such shares into shares of any other class or series of securities of the Association.

8.     <u>Voting rights</u>.

(a)     Except as expressly required by law or as expressly stated in subsection (b) of this Section (D)(8), the holders of shares of Series F Preferred Stock shall have no voting power, and no right to vote on any matter at any time, either as a separate series or class or together with any other series or class of shares, and shall not be entitled to call a meeting of such holders for any purpose, nor shall they be entitled to participate in any meeting of the holders of the Common Stock.

(b)     If the Association fails to pay, or declare and set aside for payment, full dividends on the shares of Series F Preferred Stock after issuance or any other series of Preferred Stock of the Association having similar voting rights to the Series F Preferred Stock (the "Series F Voting Parity Stock") for six Series F Dividend Periods or their equivalent, the authorized number of the Association's directors will be increased by two.  Subject to compliance with any requirement for regulatory approval of, or non-objection to, persons serving as directors, the holders of shares of Series F Preferred Stock, voting together as a single class with the holders of any Series F Voting Parity Stock who have also not received dividends for six Series F Dividend Periods or their equivalent, will have the right to elect two directors in addition to the directors then in office at the Association's next annual meeting of shareholders, which annual meeting shall be called by the Association no later than May 31 of each year in the event that the holders of the Series F Preferred Stock are entitled to elect additional directors pursuant to this Section (D)(8). This right of the holders of Series F Preferred Stock will continue at each subsequent annual meeting until the Association pays dividends on the Series F Preferred Stock for three consecutive Series F Dividend Periods and pays or declares and sets aside for payment dividends for the fourth consecutive Series F Dividend Period.

(c)     The term of such additional directors will terminate, and the total number of directors will be decreased by two, at the first annual meeting of shareholders after the Association pays dividends on the Series F Preferred Stock and any Series F Voting Parity Stock for three consecutive Series F Dividend Periods or their equivalent and declares and pays or sets aside for payment dividends on the Series F Preferred Stock and the Series F Voting Parity Stock for the fourth consecutive Series F Dividend Period or, if earlier, upon the redemption of all shares of Series F Preferred Stock and any Series F Voting Parity Stock. After the term of such additional directors terminates, the holders of the shares of Series F Preferred Stock will not be able to elect additional directors unless dividends on the shares of Series F Preferred Stock have

24

again not been paid or declared and set aside for payment for six future Series F Dividend Periods.

(d)     Any additional director elected by the holders of the shares of Series F Preferred Stock and the Series F Voting Parity Stock may only be removed by the vote of the holders of record of the outstanding Series F Preferred Stock and the Series F Voting Parity Stock, voting together as a single and separate class, at a meeting of Association shareholders called for that purpose. As long as dividends on the Series F Preferred Stock or any Series F Voting Parity Stock have not been paid for six Dividend Periods or their equivalent, any vacancy created by the removal of any such director may be filled only by the vote of the holders of the outstanding Series F Preferred Stock and any Series F Voting Parity Stock, voting together as a single class, at the same meeting at which such removal is considered.

9.     Legend.  Shares of the Series F Preferred Stock will bear a legend substantially in the form of the following legend on the face thereof:

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY STATE SECURITIES LAWS OR ANY OTHER APPLICABLE SECURITIES LAW.  NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE OFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, SUCH REGISTRATION.

E.     Description and Designation of Series G Preferred Stock

1.     Designation.  The designation of Series G preferred stock shall be Series G Non-cumulative Fixed Rate Preferred Stock (hereinafter referred to as "Series G Preferred Stock") and the number of shares constituting Series G Preferred Stock shall be 3,950,484 shares.  Shares of Series G Preferred Stock shall have $0.01 par value per share and shall have a liquidation preference of $25.00 per share.

2.     Issuance upon Exchange.

(a)     The shares of Series G Preferred Stock shall be issued on a share-for-share basis (the "Exchange") for the Series A Preferred Stock of PFGI Capital Corporation (the "PFGI Preferred Stock"), only upon the occurrence of one of the following:  (i) the Association becomes less than "adequately capitalized" under the OCC's "prompt corrective action" regulations, (ii) the Association is placed into conservatorship or receivership, (iii) the OCC, in its sole discretion, directs in writing that the PFGI Preferred Stock be exchanged in the event that the OCC anticipates the Association becoming less than "adequately capitalized" in the near term, or (iv) the OCC, in its sole discretion, directs in writing that the PFGI Preferred Stock be exchanged in the event that the Association has a Tier 1 risk-based capital of less than 5.0% (each of (i) through (iv), an "Exchange Event").

(b)     The Exchange will occur as of 8:00 A.M. New York time  on the earliest possible date such exchange could occur consistent with the applicable OCC directive, as

25

evidenced by the issuance by the Association of a press release prior to such time. As of the effective time of the Exchange (i) all of the outstanding PFGI Preferred Stock to be surrendered to the Association will be deemed canceled and exchanged for shares of Series G Preferred Stock without any other action on the part of any other person, (ii) all rights of the holders of such PFGI Preferred Stock as stockholders of PFGI Capital Corporation shall cease and such persons shall thereupon and thereafter be deemed to be and shall be for all purposes the holders of Series G Preferred Stock and (iii) the Association will give notice of the Exchange to the OCC.

(c)    The Association will mail notice of the issuance of an OCC directive after the occurrence of an Exchange Event to each holder of PFGI Preferred Stock by first-class mail, postage prepaid, mailed within 30 days of such Exchange Event, at such holder's address as the same appears on the stock register of PFGI Capital Corporation. Each such notice shall indicate the place or places where certificates of the PFGI Preferred Stock are to be surrendered by the holders thereof, and the Association will deliver (or cause to be delivered) to each such holder Series G Preferred Stock upon surrender of the certificates for the PFGI Preferred Stock. Until such replacement share certificates are delivered (or in the event such replacement certificates are not delivered), certificates previously representing the PFGI Preferred Stock shall be deemed for all purposes to represent Series G Preferred Stock.

(d)    Any of the PFGI Preferred Stock redeemed prior to the effective time of the Exchange shall not be deemed outstanding and shall not be subject to the Exchange. In the event of an Exchange, any accrued and unpaid dividends on the PFGI Preferred Stock to be surrendered to the Association as of the effective time of the Exchange shall be deemed to be accrued and unpaid dividends on the Series G Preferred Stock.

3.    Ranking.

The shares of Series G Preferred Stock shall rank:

(a)    senior, as to dividends or upon liquidation, dissolution and winding up, to the Common Stock, and senior, as to dividends or upon liquidation, dissolution and winding up, to all other classes and series of capital stock of the Association now or hereafter authorized, issued or outstanding that, by their terms, do not expressly provide that they rank *pari passu* with the Series G Preferred Stock as to dividends or upon liquidation, dissolution and winding up, as the case may be (collectively, "Series G Junior Securities"); and

(b)    on a parity, as to dividends or upon liquidation, dissolution and winding up with the Series C, Series D, Series E and Series F, and with each class or series of preferred capital stock of the Association hereafter authorized, issued or outstanding which specify that they are *pari passu* with the Series G Preferred Stock (collectively, "Series G Parity Securities").

The Association may authorize and issue additional shares of Series G Junior Securities and Series G Parity Securities without the consent of the holders of the Series G Preferred Stock. The holders of shares of Series G Preferred Stock will have no preemptive rights with respect to any shares of the Association's capital stock or any of its other securities convertible into or carrying rights or options to purchase any such capital stock.

26

4.     Dividend Rights.

(a)     Holders of shares of the Series G Preferred Stock shall be entitled to receive, if, when and as declared by the Board of Directors out of legally available assets, noncumulative cash dividends at the rate of 7.75% per annum of the liquidation preference, which is $25.00 per share.  If authorized and declared, dividends on the Series G Preferred Stock will be payable quarterly in arrears on February 17, May 17, August 17 and November 17 of each year or, if any such day is not a business day, on the next business day, unless the next business day falls in a different calendar year, in which case the dividend shall be paid on the preceding business day.  Each such quarter is referred to herein as a "Series G Dividend Period."  Each authorized and declared dividend shall be payable to holders of record as they appear on the Association's stock register on the related record dates, which shall be on the first day of each month in which the dividend payment date falls.  Such record dates shall not be more than 45 days nor less than 10 days before the dividend payment dates.  Dividends payable on the shares of the Series G Preferred Stock for any period greater or less than a full Series G Dividend Period will be computed on the basis of twelve 30-day months, a 360-day year, and the actual number of days elapsed in the period; provided, however, that upon initial issuance, dividends, if authorized and declared, shall accrue from the first day of the Series G Dividend Period in which such shares were issued, notwithstanding the fact that the shares may not have been outstanding for the full dividend period.

(b)     The right of holders of Series G Preferred Stock to receive dividends is noncumulative.  If the Board of Directors does not authorize a dividend on the Series G Preferred Stock or authorizes less than a full dividend in respect of any Series G Dividend Period, the holders of the Series G Preferred Stock shall have no right to receive any dividend or a full dividend, as the case may be, for that dividend period, and the Association shall have no obligation to pay a dividend or to pay full dividends for that dividend period, whether or not dividends are declared and paid for any future Series G Dividend Period with respect to the Series G Preferred Stock, any other class of the Association's preferred stock or the Common Stock.

(c)     If full dividends on the Series G Preferred Stock for any Series G Dividend Period shall not have been declared and paid, or declared and a sum sufficient for the payment thereof shall not have been set apart for such payments:

(i)     no dividends shall be declared or paid or set aside for payment and not other distribution shall be declared or made or set aside for payment upon the Series G Junior Securities or the Series G Parity Securities for that dividend period, except by conversion into, or exchange for, other shares of the capital stock of ranking junior to the Series G Preferred Stock as to dividends and amounts upon liquidation;

(ii)     no Common Stock or any other of the Association's capital stock will be redeemed, purchased or otherwise acquired for any consideration; and

(iii)     no monies shall be paid to or made available for a sinking fund for the redemption, repurchase or other acquisition of any such stock by the Association;

27

*until*, in the case of clauses (i), (ii) and (iii) above, such time as dividends on all of the outstanding Series G Preferred Stock have been:

        (A)    declared and paid for three consecutive Series G Dividend Periods; and

        (B)    declared and paid or declared and a sum sufficient for such payment has been set apart for payment for the fourth consecutive Series G Dividend Period.

        (d)    When dividends are not paid in full on, or a sum sufficient for such full payment is not set apart for, the Series G Preferred Stock and any other Series G Parity Securities, all dividends declared upon the Series G Preferred Stock and any Series G Parity Securities shall be declared pro rata.

        5.    <u>Voting Rights</u>.  Except as required by law, the holders of each share of Series G Preferred Stock shall not be entitled to any voting rights and shall not be entitled to elect any directors.

        6.    <u>Liquidation Rights</u>.

        (a)    If the Association voluntarily or involuntarily liquidates, dissolves, or winds up, the holders of the Series G Preferred Stock at the time outstanding shall be entitled to receive liquidating distributions in the amount of $25.00 per share, plus any authorized, declared, and unpaid dividends for the current dividend period to the date of liquidation, out of the Association's assets legally available for distribution to its shareholders, before any distribution of assets is made to holders of the Series G Junior Securities and subject to the rights of the holders of any Series G Parity Securities upon liquidation and the rights of the Association's depositors and creditors.

        (b)    After payment of the full amount of the liquidating distributions to which they are entitled, the holders of the Series G Preferred Stock shall have no right or claim to any of the Association's remaining assets. If, upon any such voluntary or involuntary liquidation, dissolution, or winding up, the Association's available assets are insufficient to pay the amount of the liquidation distributions on all outstanding Series G Preferred Stock and the corresponding amounts payable on any Series G Parity Securities, then the holders of the Series G Preferred Stock and any Series G Parity Securities shall share ratably in any such distribution of assets in proportion to the full liquidating distributions to which they would otherwise be respectively entitled.

        (c)    The Association's consolidation or merger with or into any other entity, the consolidation or merger of any other entity with or into the Association, or the sale of all or substantially all of the Association's property or business, shall not be deemed to constitute a liquidation, dissolution or winding up under this subsection 6.

7.    Optional Redemption.

(a)    The Association may redeem the Series G Preferred Stock for cash, in whole or in part, at any time and from time to time at the Association's option with the prior approval of the OCC at the redemption price of $25.00 per share, plus authorized, declared and unpaid dividends to the date of redemption, without interest. If the Board of Directors of the Association determines that the Association should redeem fewer than all the outstanding Series G Preferred Stock, the shares of Series G Preferred Stock to be redeemed shall be determined by lot, pro rata, or by such other method as the Board of Directors of the Association in its sole discretion shall determine to be equitable. Any such partial redemption can only be made with the prior approval of the OCC.

(b)    Dividends shall cease to accrue on the Series G Preferred Stock called for redemption on and as of the date fixed for redemption, and such Series G Preferred Stock shall be deemed to cease to be outstanding, provided that the redemption price, including any authorized and declared but unpaid dividends to the date fixed for redemption, without interest, has been duly paid or provision has been made for payment.

(c)    Notice of any redemption shall be mailed at least 30 days, but not more than 60 days, prior to any redemption date to each holder of the Series G Preferred Stock to be redeemed at such holder's registered address. Each such notice shall state: (1) the redemption date; (2) the number of shares of Series G Preferred Stock to be redeemed and, if less than all the shares held by such holder are to be redeemed, the number of such shares to be redeemed from such holder; (3) the redemption price; (4) the place or places where certificates for such shares are to be surrendered for payment for the redemption price; and (5) that dividends on the shares to be redeemed will cease to accrue on such redemption date. Notice having been mailed as aforesaid, from and after the redemption date, dividends on the shares of the Series G Preferred Stock so called for redemption shall cease to accrue, and said shares shall no longer be deemed to be outstanding, and all rights of the holders thereof as shareholders of the Association (except the right to receive from the Association the redemption price) shall cease.

(d)    Upon surrender in accordance with said notice of the certificates for any shares so redeemed (properly endorsed or assigned for transfer, if the Board of Directors of the Association shall so require and the notice shall so state), such shares shall be redeemed by the Association at the redemption price as aforesaid. If less than all the outstanding shares of the Series G Preferred Stock are to be redeemed, shares to be redeemed shall be selected by the Association from outstanding shares of Series G Preferred Stock not previously called for redemption by lot or prorate (as nearly as may be) or in such other manner as the Board of Directors of the Association may determine. A new certificate shall be issued representing the unredeemed shares without cost to the holder thereof. No failure to mail such notice or any defect therein or in the mailing thereof shall affect the validity of the proceedings for such redemption except as to the holder to whom the Association has failed to mail such notice or except as to the holder whose notice was defective.

SIXTH: The Board of Directors shall appoint one of its members President of the Association who shall be Chairman of the Board; but the Board of Directors may appoint a

29

Director, in lieu of the President, to be Chairman of the Board, who shall perform such duties as may be designated by the Board of Directors. The Board of Directors shall have the power to appoint one or more Vice Presidents of various ranks; to appoint a Cashier, a Secretary, and such other officers and employees as may be required or deemed advisable to transact the business of the Association; to fix the salaries to be paid such officers and employees; to dismiss at its pleasure such officers and employees and to appoint others to take their place.

The business and affairs of the Association shall be managed by or under the direction of the Board of Directors. The Board of Directors shall have the power to define the duties of officers and employees of the Association and to require adequate bonds from them for the faithful performance of their duties; to make all By-Laws and adopt all resolutions that may be lawful for the general regulation of the business of the Association and the management of its affairs, including but not limited to, the manner of election or appointment of Directors, officers, or employees and the appointment of judges of election, and generally to do and perform all acts that may be lawful for a Board of Directors to do and perform. Notwithstanding any provision of this or any other Article, the Board of Directors may delegate to the management of the Association such authorities and powers as the Board of Directors seems advisable from time to time, to the fullest extent permitted by applicable laws, regulations, and safe and sound banking practices.

SEVENTH: (a) The Association may make or agree to make indemnification payments to an institution-affiliated party, as defined at 12 U.S.C. § 1813(u), for an administrative proceeding or civil action initiated by any federal banking agency, that are reasonable and consistent with the requirements of 12 U.S.C. § 1828(k) and the implementing regulations thereunder.

(b) The Association may indemnify an institution-affiliated party, as defined at 12 U.S.C. § 1813(u), for damages and expenses, including without limitation the advancement of expenses and legal fees, judgments, fines, taxes, penalties, and amounts paid or to be paid in settlement, in cases involving an administrative proceeding or civil action not initiated by a federal banking agency, to the fullest extent permitted under the laws of the Commonwealth of Pennsylvania, provided such payments are consistent with safe and sound banking practices.

(c) This Article shall apply in each case where the institution-affiliated party, as defined at 12 U.S.C. § 1813(u), is or shall have been such an institution-affiliated party of the Association or is serving or shall have served at the request of the Association as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust or other enterprise, and such rights shall also extend to his or her heirs, executors and administrators.

(d) The rights granted under this Article shall be deemed to constitute a contract between the Association and each institution-affiliated party, as defined at 12 U.S.C. § 1813(u), and shall not be deemed to be exclusive of other rights to which any such institution-affiliated party may be entitled in any capacity as a mater of law or under any By-Laws, agreement, vote of shareholders or directors, or otherwise.

(e) The Association may provide for the payment of reasonable premiums for insurance policies or fidelity bonds covering the payment of expenses, legal fees, and the liabilities of its institution-affiliated parties, as defined at 12 U.S.C. § 1813(u), to the fullest extent permissible under federal banking agency regulations.

EIGHTH:  The Board of Directors shall have the power, without the approval of the shareholders, to change the location of the main office to any other place within the limits of the City of Wilmington, New Castle County, Delaware, and to establish or change the location of any branch or branches of the Association subject to the approval of the Comptroller of the Currency.

NINTH:  The corporate existence of the Association shall continue until terminated in accordance with the laws of the United States.

TENTH:  The Board of Directors of the Association, or any three (3) or more shareholders owning, in the aggregate, not less than ten (10%) per centum of the stock of the Association, may call a special meeting of the shareholders at any time.  Unless otherwise provided by the laws of the United States or duly waived, a notice of the time, place, and purpose of every annual and every special meeting of the shareholders shall be given by first-class mail, postage prepaid, mailed at least ten (10) days prior to the date of such meeting to each shareholder of record at his address as shown upon the books of the Association.

ELEVENTH:  These Articles of Association may be amended at any regular or special meeting of the shareholders by the affirmative vote of the holders of a majority of the stock of this Association, unless the vote of the holders of a greater amount of stock is required by law, and in that case by the vote of the holders of such greater amount.

TWELFTH:  Honorary or advisory directors, to act in advisory capacities without voting power or power of final decision in matters concerning the business of the Association, may be appointed, or removed at any time with or without cause, by:  (i) a resolution adopted by a majority of the full Board of Directors; (ii) a resolution adopted by shareholders at any annual or special meeting, or a Written Action in lieu of such a meeting; or (iii) a Written Action signed by the President of the Association.  Honorary or advisory directors shall not be counted to determine the number of Directors of the Association or the presence of a quorum in connection with any Board action and shall not be required to own a qualifying equity interest.  Any listing of honorary or advisory directors shall distinguish between them and the Association's Board of Directors or indicate their advisory status.  Honorary or advisory directors, together with one or more of the Association's Directors or officers, may be appointed to, or removed at any time with or without cause from, one or more advisory boards by a Written Action signed by the President of the Association, to serve upon such terms and conditions as may be specified by the Board of Directors or the Association's By-Laws.  An honorary or advisory director may resign at any time by delivering written notice to the President of the Association or to the Association's Secretary, which resignation shall be effective when the notice is delivered, unless the notice specifies a later effective date.